IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DANNY RAY WESTMORELAND, D.O.,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:08-1444

PLEASANT VALLEY HOSPITAL, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are motions by each of the named defendants to dismiss. Upon consideration of the motions and briefs filed in support and opposition, the Court **FINDS** that it lacks jurisdiction to hear this matter. Defendant Dr. Vaidya's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 44) is **GRANTED**. The Court **ORDERS** that the case be stricken from the docket.

**Background**

Plaintiff, Danny Ray Westmoreland is a board certified family practice physician, licensed in West Virginia, Ohio, and Florida. His principal office is located in Mason County, West Virginia. Dr. Westmoreland has been a staff member of Defendant Pleasant Valley Hospital (PVH) for nearly 23 years, serving on various committees – including the Executive Committee and Credentialing Committee. On October 9, 2007, Dr. Westmoreland received a letter from PVH informing him that he did not meet the requirements for renewal of staff privileges. Those privileges terminated on January 1, 2008. This loss affected Dr. Westmoreland's ability to treat his patients at PVH. He alleges that the named defendants each conspired with one another to terminate his staff privileges.

Dr. Westmoreland has since had his privileges reinstated – retroactive to January 2008. Despite the restoration of these privileges, Dr. Westmoreland alleges continued hardships as a result of the deprivation. Plaintiff's complaint describes how Dr. Westmoreland lost the opportunity to become a contract physician associated with Holzer Clinic, at a guaranteed salary equivalent to the money he had earned himself in recent years, when Holzer found out about his terminated hospital privileges. Additionally, he claims, the defendants harmed and continue to harm Dr. Westmoreland's private practice. The individually named physicians have told his patients about the termination of privileges and question the quality of care they receive from the plaintiff in attempts to divert his patients to PVH physicians. PVH itself has assigned two doctors to clinics located near Dr. Westmoreland's office.

Dr. Westmoreland filed this action in federal court against PVH and the members of the peer review committee that decided voted to revoke his privileges. His original complaint (Doc. 1) alleged nine counts: 1) Breach of Contract/Breach of Implied Covenant; 2) Denial of Due Process; 3) Tortious Interference; 4) Health Care Quality Improvement Act "HCQIA" Claim; 5) Anti-Trust; 6) Interference with a Business Relationship or Contract; 7) Libel/Defamation; 8) Intentional/Negligent Infliction of Emotional Distress; 9) Punitive Damages. As answer, one of the Defendants, Dr. Shrikant K. Vaidya, filed a motion to dismiss for lack of subject matter jurisdiction. Plaintiff responded with a request to amend, in order to more clearly state a claim under federal law. The Court granted Plaintiff's request and held Dr. Vaidya's motion to dismiss in abeyance.

Plaintiff filed his First Amended Complaint, on March 11, 2009. The amended complaint contained the same nine counts, but added references to federal law on the claims of Denial of Due Process, the HCQIA Claim, and Anti-Trust. As an answer, Dr. Vaidya renewed his motion to

dismiss for lack of jurisdiction.  For the reasons explained below, the Court lacks jurisdiction to hear Plaintiff's claims.  As a result, the case shall be dismissed.

## Standard of Review

A motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of the Court's authority to adjudicate the claims before it.  *Ohio Valley Envtl Coalition v. Apogee Coal Co, Inc ("OVEC")*, 531 F.Supp.2d 747, 764 (S.D. W.Va. 2008) (Chambers, J.).  "It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits." *Id.*  A challenge to such jurisdiction can be raised in two ways – upon the face of the complaint or upon the validity of the facts stated therein.  *Id.* (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *abrogated on other grounds by, Sheridan v. United States*, 487 U.S. 392 (1988). Whereas here, when a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer jurisdiction.  *Id.*  When undertaking such an analysis it may be necessary to test the legal sufficiency of the claims upon which jurisdiction is based.   When conducting such a test, the court must consider whether the facts alleged are sufficient "to raise a right of relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## Analysis

Plaintiff argues that three of his nine stated claims provide this Court with subject matter jurisdiction. In his claim for violation of due process he cites the Fifth and Fourteenth Amendments to the United States Constitution as well as the HCQIA.  He argues that the Defendants are all liable under the HCQIA, because they did not comply with the provision stated in 42 U.S.C. § 11112.

Finally, he argues that the defendants are liable for violating provisions of the Sherman Anti-Trust Act, specifically 15 U.S.C. §§ 1, 13, 15, and 26. Dr. Vaidya argues that none of the stated causes of action are supported by federal law: 1) the due process claim cannot stand because there is no federal actor; 2) the HCQIA does not create a private cause of action; 3) there was no anti-trust conspiracy because there was a single actor, and Plaintiff has not made the requisite allegations to state a claim for monopolization. This opinion will address each claimed basis for federal jurisdiction in turn.

## I. The Claim for Lack of Due Process Fails for Want of A State Actor.

Both the Fifth and Fourteenth Amendments were "intended to prevent *government* 'from abusing its power, or employing it as an instrument of oppression.'" *Deshaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195-96 (1989). The Fifth Amendment provides protection against actions by the federal government. *U.S. v. Al-Hamdi*, 356 F.3d 564, 574 n. 11 (4th Cir. 2004). The Fourteenth Amendment incorporates many of the substantive protections of the Fifth Amendment and makes them applicable to *state* action. *Deshaney,* 489 U.S. at 195-96. It provides: "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." *Id.* (quoting U.S. Const. amend. XIV § 1). Due process was intended to forbid, "the State itself to deprive individuals of life, liberty or property without 'due process of law,' but [the] language cannot be fairly extended to impose an affirmative obligation on the State to ensure that those interest do not come to harm through other means." *Id.* In order to maintain a claim for due process under the U.S. constitution a governmental actor must be identified.

PVH is a privately owned and operated hospital; the individual doctors named as defendants were private practice physicians acting in the capacity of PVH. As this Court has previously

indicated, a private hospital is not normally a state actor. *See King v. Teays Valley Health Servs., Inc.,* 2006 WL 297719 at *2-*3 (S.D. W.Va. Feb. 7, 2006) (Chambers, J.). The Fourth Circuit Court of Appeals has specifically held that a hospital does not act in an official governmental capacity when it makes decisions regarding a physician's hospital privileges, even when a statute authorizes the reporting of such decisions to a state agency. *Wahi v. Charleston Area Med. Center, Inc.* 562 F.3d 599, 615-16 (4th Cir. 2009). Here, there is no basis for finding that PVH or the individual physician defendants were governmental actors. The claim for violation of due process under the Fifth and Fourteenth Amendments to the U.S. Constitution must fail.[1]

## II. The Health Care Quality Improvement Act (HCQIA) Does Not Provide a Private Cause of Action Nor Present a Federal Question in this Litigation.

Although the Fourth Circuit Court of Appeals has not had opportunity to review the issue, it appears that every court to address the question of whether the HCQIA provides a private cause of action has come to the same conclusion: it does not. Scott M. Smith, Annotation, *Construction and Application of Health Care Quality Improvement Act of 1986*, 121 A.L.R. Fed 409 (1994) (updated June 2009); *Singh v. Blue Cross/Blue Shield of Mass., Inc.* 308 F.3d 25, 45 n. 18 (1st Cir. 2002); *Wayne v. Genesis Med. Ctr.,* 140 F.3d 1145, 1148 (8th Cir. 1998); *Bok v. Mut. Assurance, Inc.* 119 F.3d 927, 928-29 (11th Cir. 1997).

Congress passed the HCQIA in 1986 to respond to a crisis in the monitoring of healthcare professionals. *Singh,* 308 F.3d at 31.

> Finding that incompetent "physicians find it all to[o] easy to move to different hospitals or states and

---

[1]Plaintiff also makes a claim of due process under the HCQIA. This due process claim fails for the same reasons as Plaintiff's generic "HCQIA claim" because the statue does not provide a private cause of action.

> continue their practices in these new locations," Congress mandated the creation of a national database that recorded incidents of malpractice and that was available for all health care entities to review when screening potential employees.

*Id.* (quoting H.R. Rep. No. 99-903, at 2). To encourage peer review an expose incompetent physicians, the HCQIA protects reviewing physicians and hospitals from liability from damages when they act to monitor the competence of healthcare workers. *Id.* There is no express private cause of action under HCQIA. Based on its purpose – to protect reviewers rather than those reviewed – courts have found there is no implied cause of action either. *See e.g. Wayne,* 140 F3d. at 1148 (analyzing the factors enunciated in *Cort v. Ash,* 422 U.S. 66 (1975)). At least one circuit court of appeal has specifically found that attempts to assert HCQIA claims in a complaint are insufficient to confer federal subject matter jurisdiction. *See e.g. Hancock v. Blue Cross-Blue-Shield of Kan., Inc.*, 21 F.3d. 373, 374-75 (10th Cir. 1994). Plaintiff does not have a claim under the HCQIA and those premised on the statute cannot support federal jurisdiction.

Plaintiff argues, in the alternative, that even if the HCQIA does not provide federal jurisdiction, the immunity provided by the statute creates a question of federal law that should be decided by this Court. He cites to *Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Manufacturing,* 545 U.S. 308 (2005), for the proposition that the lack of a federal cause of action does not bar the exercise of federal jurisdiction, if there exists a substantial federal question. While *Grable* does stand for the proposition cited, it is a narrow circumstance where federal jurisdiction will exist despite the lack of a federal cause of action. The standard as articulated in *Grable* is whether a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved

balance of federal and state judicial responsibilities." *Id.* at 314. The single dispositive issue in *Grable* was whether the actions of the Internal Revenue Service were compatible with a federal statute. Because the resolution of this issue would create controlling precedent, the issue was considered "substantial." The narrow nature of the *Grable* holding was recognized within the text of that opinion as well as in later Supreme Court rulings. *Id.* at 312-24; *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699-701 (2006) ("This case cannot be squeezed into the slim category *Grable* exemplifies."). Here, there exists no issue so substantial as to fit within the narrow set of circumstances *Grable* recognized: there is no federal agency involved; the federal question is raised as an anticipated defense, rather than an element of the claim; and, the resolution of the question is unlikely to serve as new and binding precedent. In short, the HCQIA does not support federal jurisdiction.[2]

### III. Plaintiff's Allegations Fail to State a Claim Under the Sherman Anti-Trust Act.

Plaintiff grounds his anti-trust claim on a conspiracy resulting in the termination of his staff hospital privileges, actions by individual physicians to divert patients from his care, the movement of PVH physicians to clinics near his home office, and the fact that PVH is the only hospital within Mason County, West Virginia. The statutory basis for the claims are provisions of the Sherman Anti-Trust Act: 15 U.S.C. §§ 1, 13, 15, and 26. None of his factual allegations, however, are sufficient to support a legal claim under the provisions referenced.

---

[2]Plaintiff cites a number of cases, most prominently *Manion v. Evans,* 986 F.2d 1036 (6th Cir. 1993), for the proposition that the HCQIA does not bar lawsuits for injunctive and other non-monetary damages. *Manion* does stand for this principle, stating for instance, ". . . even disciplined physicians can still bring private causes of action for injunctive or declaratory relief, it would seem by implication that what the Act prohibits is the ability of disciplined physicians to bring suit for damages." *Id.* (internal quotations omitted). Not providing immunity from certain types of claims is, however, different than creating a cause of action for those claims.

Section 1 of Title 15 in the United States Code proscribes "[e]very contract, combination, . . .or conspiracy, in restraint of trade or commerce." This provision does not apply to independent action. *Monsanto Co. v. Spray-Rite Service Corp.* 465 U.S. 752, 761 (1984). According to the face of the complaint, the defendants were "at all time relevant herein . . . employees and [/]or agents of Defendant Pleasant Valley Hospital, Inc." Pl.'s First Amended Compl. at ¶ 5 (Doc. 42). As such they were acting a as a single entity during the peer review process resulting in the termination of Dr. Westmoreland's privileges. *See Oksanen v. Page Mem'l Hosp.,* 945 F.2d 696, 702-03 (4th Cir. 1991) (holding that staff members are agents of hospital during peer review and are not separate entities capable of a conspiracy). They were incapable of conspiracy and this allegation cannot serve the basis of a cause of action under 15 U.S.C. § 1.

There is likewise no basis for a claim under sections 13, 15, or 26 of Title 15. Section 13 prohibits price discrimination. 15 U.S.C § 13. To state a *prima facie* case under this section a plaintiff must allege: "(1) a seller sold the same product at different prices to different purchasers[;] . . . and (2) such differences in price reasonably may cause injury to competition." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160 (4th Cir. 1999). No such allegations have been made here. Section 15 is entitled "Suits by persons injured." 15 U.S.C. § 15. It creates a private right of action for a violation of the anti-trust laws, but is not itself a substantive provision which may be violated. *See id.* Similarly § 26, entitled "Injunctive relief for private parties; exception; costs" specifies remedies available to an anti-trust litigant but does not constituted a substantive section which may serve as a violation. *See* 15 U.S.C. § 26.

Plaintiff references PVH's status as the lone hospital in Mason County, and refers to an attempt at monopolization. As such his complaint may be construed to allege an attempt to

-8-

monopolize; proscribed by 15 U.S.C. § 2. If such a claim was intended, however, it is unsupported by the allegations in the complaint. The heart of Dr. Westmoreland's complaint is PVH's decision to exclude him from its operation – an act which would foster competition, rather than preclude it, by forcing Dr. Westmoreland to seek other means of treating his patients. Although Plaintiff does allege actions by individual defendants to harm his practice, he provides no allegation of how their respective practices overlap his own and thus no allegation of a probability that they would achieve monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (stating "a dangerous probability of achieving monopoly power" as an element of a § 2 claim and describing relevant considerations as "the relevant market and the defendant's ability to lessen or destroy competition in that market."). By referencing an attempt at monopolization, Plaintiff may have set forth a conceivable claim under 15 U.S.C. § 2. The facts contained within the complaint, however, are not sufficient to nudge his claims "across the line from conceivable to plausible." *Bell Atl. Corp.* 550 U.S. at 570. In other words, he has not raised a right to relief above the speculative level. *See id.* Plaintiff's Sherman Act claims do not serve as a viable basis for federal jurisdiction.

**IV.     Plaintiff's References to Cases Where Jurisdiction Was Not an Issue Are Unavailing.**

Plaintiff points to two cases, factually similar to this one, in which federal courts exercised jurisdiction: – *Braswell v. Haywood Regional Medical Center*, 352 F.Supp.2d 639 (W.D. N.C. 2005) and *Wahi v. Charleston Area Medical Center* 453 F.Supp.2d 942 (S.D. W.Va. 2006). He contends that because he has made similar allegations to those raised in *Braswell* and *Wahi*, that this Court should similarly exercise jurisdiction. Subject matter jurisdiction, however, was not an issue

discussed in either of these two cases. Neither *Braswell* nor *Wahi* can stand as dispositive authority for an issue left unaddressed by the respective opinion.[3]

## V.    The Court Declines to Rule on Defendant Vaidya's Request for Attorney's Fees.

In the last section of his reply memorandum, Dr. Vaidya request that the Court award him attorneys' fees for substantially prevailing against Plaintiff. Because this request was brought up in reply, rather than in a motion, and because Dr. Westmoreland has not had opportunity to respond, the Court will not decide the issue. Dr. Vaidya shall not be precluded from filing a separate motion seeking fees, if he so desires.

### Conclusion

For the reasons explained above, the Court **FINDS** that it lacks jurisdiction to hear this matter. Consequently Defendant Dr. Vaidya's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 44) is **GRANTED**. The Court **ORDERS** that the case be removed from the docket. Finally, the Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    June 11, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3]Earlier in this opinion, the Court reference the Fourth Circuit Court of Appeal's decision in *Wahi* for the proposition that a private hospital does not normally constitute a government actor. This issue arose because the plaintiff alleged a claim under 42 § 1983; a claim requiring a state actor.